765 P.2d 1183

STATE of New Mexico,
Plaintiff–Appellee,

v.

Robert James TAFOYA,
Defendant–Appellant.

No. 9004.

Court of Appeals of New Mexico.

Sept. 22, 1988.

Certiorari Denied Nov. 18, 1988.

Hal Stratton, Atty. Gen., Charles H. Rennick, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

John L. Walker, Albuquerque, for defendant-appellant.

## OPINION

MINZNER, Judge.

This case is before us on remand from the Supreme Court of the United States. In *State v. Tafoya*, 105 N.M. 117, 729 P.2d 1371 (Ct.App.1986), we held that defendant was not denied his right of confrontation by the trial court's admission into evidence of videotaped depositions of victims of sex crimes taken under circumstances in which defendant was required to remain in a control room instead of the room in which the testimony was given. In *Tafoya v. New Mexico*, —— U.S. ——, 108 S.Ct. 2890, 101 L.Ed.2d 924 (1988), the Supreme Court vacated our judgment and remanded "for further consideration in light of *Coy v. Iowa*, 487 U.S. 1012 [108 S.Ct. 2798, 101 L.Ed.2d 857] (1988)". We have considered this case further in accordance with the mandate and determine that the rationale of our prior opinion must be revised. However, we do not believe that *Coy v. Iowa* requires a different result. For the reasons stated below, we reaffirm defendant's convictions.

BACKGROUND.

Defendant was accused and convicted of various counts of aggravated burglary, kidnapping, criminal sexual penetration, criminal sexual contact, and aggravated battery arising out of seven incidents. In each incident, a stranger invaded the victim's home after she was asleep. In six incidents, the victims were young girls, ranging in age from four to eleven. The seventh victim was an adult woman.

Prior to trial, the state moved for an order permitting it to offer, in lieu of trial testimony by the six children, videotaped depositions taken pursuant to statute and court rule. *See* NMSA 1978, § 30-9-17 (Repl.Pamp.1984); SCRA 1986, 5-504 (Cum.Supp.1988). Under the statute and court rule, the trial court had discretion to grant the state's motion upon a showing that "the child is unable to testify before the court without suffering unreasonable and unnecessary mental or emotional harm." *See* R. 5-504(B)(1); *cf.* § 30-9-17 (the district court, for good cause shown, may order the taking of a videotaped deposition). ·

Under statute and court rule, the videotaped deposition is to be taken in defendant's presence. However, in this case, the state asked the trial court to require defendant to observe the deposition on a television monitor from a control booth. Defendant objected and also requested an independent psychological evaluation of the children. The trial court granted defendant's motion for an independent evaluation and scheduled a hearing on the state's motion.

At the hearing, the court heard testimony from three different experts. One had treated the nine-year-old, one had treated the four-year-old, and a · third had interviewed the other four children. The court also heard testimony from some of the parents.

At the close of the hearing, the trial court ruled that the state had made the statutory showing of unreasonable and unnecessary harm as to four children, aged four, eight, nine, and twelve. The court also ruled that one child, age eleven, was able to testify in court and reserved ruling on another, also age eleven.

Ultimately, five of the six children were deposed on videotape. During each deposition, defendant was seated in a separate room from which he could view the proceedings on a television monitor. The witnesses could not see him, but they were aware that he could see them. Defendant's attorney was present in the room in which the deposition was taken, as was the trial court judge and counsel for the state. Defendant and his attorney were equipped with headsets and microphones for two-way communication. We assume that each child was accompanied by a supportive adult, as requested by the state in its motion. It is clear that each child was subject to cross-examination.

The depositions were presented at trial, at which the adult victim and one of the children testified in person. The state also presented a variety of real and circumstantial evidence, including fingerprints, serology tests, and statistical evidence that implicated defendant. Defendant's defense was an alibi.

On appeal defendant argued, among other things, that the procedures authorized by the trial court were not consistent with the statute and court rule, and also violated his right to confrontation guaranteed by the sixth amendment. In our prior opinion, we held that the deposition was taken in the "presence" of defendant within the meaning of the legislature and our supreme court. We also held that, on these facts, defendant was not denied his sixth amendment right of confrontation. We reexamine each of these holdings.

DISCUSSION.

The statute and the rule require the deposition to be taken in defendant's presence. Both were drafted and enacted with the purpose of sparing child victims of sexual crimes the further trauma of in-court testimony. *State v. Vigil,* 103 N.M. 583, 711 P.2d 28 (Ct.App.1985). The rule states that the trial judge shall provide such protection of the child during the deposition as the judge deems necessary. In

view of the purpose behind the statute and rule, we believe that the procedures permitted in this case were consistent with the statute and rule, provided they were also consistent with defendant's sixth amendment right of confrontation.

The confrontation clause provides a criminal defendant with two types of protection: " 'the right physically to face those who testify against him, and the right to conduct cross-examination.' " *Coy v. Iowa* — U.S. at —, 108 S.Ct. at 2801 (quoting *Pennsylvania v. Ritchie*, 480 U.S. 39, 51, 107 S.Ct. 989, 998, 94 L.Ed.2d 40 (1987)). In essence, the clause confers at least "a right to meet face to face all those who appear and give evidence at trial." *California v. Green*, 399 U.S. 149, 175, 90 S.Ct. 1930, 1944, 26 L.Ed.2d 489 (1970). Only the right to a face-to-face meeting is at issue in this case.

In our prior decision, we recognized that the intangible effects of face-to-face confrontation formed some part of the constitutional right to confrontation. However, we questioned the need for face-to-face confrontation on the facts of this case. We noted that defendant had not contended any child was fabricating the events and thus it was unlikely that the moral suasion of facing the accused might influence the child to tell the truth.

The facts in *Coy v. Iowa* are similar to the facts in our case. In both cases, defendant did not contend the children were fabricating. Under the view taken in our previous opinion, the utility of face-to-face confrontation was remote. However, the Supreme Court in *Coy v. Iowa* did not view the right as affected by these facts. Rather, the majority opinion clearly holds that the sixth amendment guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact and that the right to a face-to-face meeting promotes values other than the right to conduct cross-examination. Further, the guarantee serves the general perception that confrontation is essential to fairness and helps to ensure the integrity of the fact-finding process by making it more difficult to lie. Given the purposes advanced

by the guarantee, we consider it unlikely that the Supreme Court intended to permit, as a preliminary matter, a case-by-case evaluation of the value of the face-to-face meeting. Thus, we begin with the premise that the confrontation clause guaranteed defendant a face-to-face meeting with his accusers. Even so, there are critical distinctions between the facts of the *Coy* case and the facts of this case. These distinctions mandate a different result in this case than in *Coy*.

First, *Coy v. Iowa* involved a statute which was viewed as creating a legislatively-imposed presumption of trauma, whereas this case involves a rule and statute which require a specific showing of unreasonable and unnecessary mental or emotional harm to the victim. Neither the rule nor the statute contemplate defendant's being in a different room. This latter innovation was allowed by the trial court under the peculiar circumstances of this case.

Second, in *Coy v. Iowa* there were no individualized findings that the particular witnesses needed special protection. The Court noted that "[s]ince there have been no individualized findings that these particular witnesses needed special protection, the judgment ... could not be sustained by any conceivable exception." *Id.* — U.S. at —, 108 S.Ct. at 2803.

In this case, there was a full day of testimony during which several experts and the parents of the children testified about the harm the children would suffer by being made to testify in open court and in the physical presence of defendant. Defendant was given time to seek his own experts and present his own testimony rebutting the state's showing of unreasonable and unnecessary mental or emotional harm. Following a continuance of the proceedings, defendant announced he would present no evidence. The court made detailed oral findings on why each child would or would not suffer the requisite mental or emotional harm. It is noteworthy that the trial court would not allow the state's suggested procedure with regard to one child and deferred its ruling with regard to another child until it heard from a

**4**

further expert. Thus, in contrast to the automatic procedure condemned in *Coy*, we have a careful, informed weighing and balancing based on particularized evidence.

Our previous opinion was based on the notion that a sufficient showing of particularized harm to the victims could outweigh the defendant's right to a face-to-face meeting with the witnesses. The United States Supreme Court cases on which we relied, *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); *Dowdell v. United States*, 221 U.S. 325, 31 S.Ct. 590, 55 L.Ed. 753 (1911); and *Mattox v. United States*, 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895), indicate that considerations of policy and necessity sometimes take precedence over the right of confrontation. In fact, the Court left "for another day, ... the question whether any exceptions exist." *Coy v. Iowa* —— U.S. at ——, 108 S.Ct. at 2803.

Although the majority opinion in *Coy* does not expressly state that a strong showing of necessity could, in another case, overcome a defendant's confrontation rights, "nothing in the Court's opinion conflicts with this approach." *Coy v. Iowa* at ——, 108 S.Ct. at 2805 (O'Connor, J., concurring). Moreover, nothing in the Court's opinion conflicts with the conclusion that the strictures of the Confrontation Clause may give way to the compelling state interest of protecting child witnesses upon a case-specific showing and case-specific finding of necessity. *See id.*

Our prior opinion was based on just such a showing and finding. It will be recalled that one victim in this case refused to sleep in her own room after the incident, instead sleeping in a sleeping bag, protected further by two sets of undergarments and two sets of nightclothes, on the floor of the family room in which her grandfather was staying. Another victim would not walk from room to room alone in her own house. An eleven-year-old victim regressed to sleeping with a nightlight and a teddy bear. The experts stood uncontradicted in their assessment that the victims were abnormally anxious in particular about the prospect of having to testify in front of defend-

ant and that "each child would have to undergo therapeutic intervention to repair the damage brought by simply testifying in that setting." *State v. Tafoya*, 105 N.M. at 121, 729 P.2d at 1375.

In addition, there was evidence that each of the five children would have difficulty testifying if defendant were present. The expert who had treated the nine-year-old testified that she would not be able to tell her full story accurately. The expert who had treated the four-year-old thought that it might be an issue as to whether she would say anything at all, much less the truth. The expert who interviewed the other four children testified as to the three who were deposed that defendant's presence might interfere with their ability to testify.

The right to a face-to-face meeting rests in part on the theory that such a right helps guarantee the accuracy of the truth-telling process. In this case, defendant was a stranger to the victims. There is no reason to believe that the evidence taken by deposition but outside defendant's physical presence was not as credible as the trial testimony would have been. In fact, the evidence suggests that the children were able to give more accurate testimony outside defendant's immediate presence than they could have given at trial.

In *Coy v. Iowa*, the Court said, "It is a truism that constitutional protections have costs." *Id.* —— U.S. at ——, 108 S.Ct. at 2802. However, it is important not to underestimate or overlook the price that must be paid by those who are neither judges nor legislators. In this case, the showing and finding of necessity by the trial court support a conclusion that the harm to the victims outweighs defendant's right to a face-to-face meeting. *See Craig v. Maryland*, 76 Md.App. 250, 544 A.2d 784 (1988). Under these circumstances, the procedures permitted were consistent with the statute and rule.

CONCLUSION.

We conclude that, on the basis of the trial court's particularized findings and on the facts of this case, no violation of defendant's right to confrontation occurred.

Thus, the procedures allowed were consistent with the statute and rule. Defendant's convictions are reaffirmed.

IT IS SO ORDERED.

ALARID and FRUMAN, JJ., concur.