784 P.2d 1041

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Craig R. LUCERO, Defendant–Appellant.**

**No. 10944.**

Court of Appeals of New Mexico.

Nov. 30, 1989.

Hal Stratton, Atty. Gen., Margaret B. Alcock, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Jacquelyn Robins, Chief Public Defender, Sheila Lewis, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

BIVINS, Chief Judge.

Defendant appeals his convictions, following a jury trial, of attempted first degree criminal sexual penetration, first degree criminal sexual penetration, criminal sexual contact of a minor, and kidnapping. He raises six issues on appeal: (1) whether use of a videotaped deposition of the child victim violated defendant's sixth amendment confrontation rights; (2) whether a mistrial should have been granted when the state brought out defendant's prior conviction for larceny; (3) whether prior consistent statements of the child were admissible under SCRA 1986, 11–801(D)(1)(b); (4) whether the trial court erred in denying defendant an opportunity to explore mother's motive to influence the child to lie; (5) whether the prosecutor impermissibly commented on defendant's failure to testify; and (6) cumulative error. Defendant voluntarily abandoned three other issues raised in his docketing statement.

We hold the trial court erred in excluding evidence offered to show mother's motive to influence the child to lie by naming defendant as her molester. Accordingly, we reverse on that issue and remand for new trial. Because the issues concerning use of the child's prior consistent statements and the videotaped deposition are likely to arise on retrial, we discuss those issues. We do not reach the remaining issues, since they are not likely to arise again.

### Background

The victim, a seven-year-old girl, told her teacher that a neighbor had sexually molested her. The teacher suggested that she tell her mother. The child informed her mother, naming defendant as her assailant. Defendant and the child's mother were long-time friends. The child also repeated the incident to Officer Chavez and Detective Craig, to the latter by a videotaped statement, and to Sabrina Garcia and Julia Barker. Garcia and Barker are psychologists who saw the child.

The child testified by a videotaped deposition taken about a month before trial. The child's prior consistent statements to the other witnesses were introduced through those witnesses. Defendant did not cross-examine the child at her deposition about these statements, although he knew of them, nor, apparently, did he request the deposition be continued so he could cross-examine her about them after they had been admitted into evidence. (We note, however, the trial court ruled at the deposition that there would be no second opportunity to have the child testify.)

1. **Mother's Motive to Influence Child to Lie**

Defendant argues mother had a motive to influence the child to fabricate that he was the offender. Defendant claimed that the child was molested by one of her mother's boyfriends, not by him. He alleged that mother improperly influenced the child to name him as the assailant. Defendant's claim on appeal is that the trial court erred in excluding his proffered testimony concerning mother's motive for influencing the child.

Defendant provided evidence suggesting that the child had been molested by someone other than defendant. Defendant's sister, a long-time friend of the child's mother, testified that she had observed at a birthday party shortly before the incident involving defendant one of mother's boyfriends in the child's bedroom near the foot of the child's bed. When she entered the room, the man left without speaking, and the child asked defendant's sister to remain with her. Later the man abruptly left the party when he saw the sister sit down next to mother. The jury could infer from these facts that another adult male may have been the child's assailant.

Defendant also provided evidence that the child's implication of defendant as the assailant was the result of deliberate influence by mother. The child described her assailant to her teacher as "a neighbor." Yet defendant was very close to the family; the child referred to him as her uncle. Defendant suggests that it would have been peculiar for the child to identify him simply as "a neighbor." Also, while there was some confusion as to the exact time, the jury could believe the child related the incident to her mother while mother was preparing to go to a Tina Turner concert. Instead of abandoning those plans and immediately calling the police or confronting defendant, mother kept her engagement, waiting until the following day to report the incident. If the jury believed that version, it could infer from the delay that either the matter was not important enough for mother to forego her plans or that she wanted to use the time to change the story.

The gap in defendant's evidence to the jury was the lack of any motive for mother to accuse defendant rather than the real culprit. Absent such a motive, the jury might find it difficult to understand why mother would want to accuse a close family friend. Supplying the motive was the purpose of the evidence excluded by the court. Defendant argued to the court that mother was trying to avoid a custody dispute with the child's father. Defendant tendered to the court, through an inquiry of mother outside the presence of the jury, that she and the child's father had engaged in a custody dispute; that father had sought sole custody, alleging that mother's home was an unsuitable environment for the child; and that mother knew the court's joint custody arrangement could be changed at any time.

Defendant attempted to argue to the court that the custody dispute provided a motivation for mother to influence the child to name defendant, an old family friend, rather than her boyfriend. Presumably, defendant's position was that father would have weaker grounds to seek a change in custody if the abuser was an old friend of both parents, rather than one of mother's apparently numerous boyfriends. The trial court, saying it could not "follow the defendant's logic or reasoning at all," denied his motion to introduce this evidence, as well as additional evidence defendant attempted to tender on this point.

In general, evidence of motive is admissible to prove that a person acted in accordance with that motive. *See* IA J. Wigmore, *Wigmore on Evidence* §§ 117, 118 (1983). Certainly, defendant's contention that mother induced her child to falsely accuse defendant as her abuser would be much more convincing to the jury if defendant could establish a motive for mother to protect the true offender and implicate defendant.

Although defendant's theory of motive was somewhat attenuated, we believe the jury could have found that the tendered evidence showed mother had a motive to induce her daughter to lie as to the identity of her assailant. Because evidence of motive is such a material issue in any trial, and because the child's identification of defendant as her assailant was the only evidence against defendant, we hold the trial court abused its discretion by refusing to allow defendant to present this evidence.

## 2. Prior Consistent Statements

■ The child initially told her teacher she had been sexually molested. She described the assailant not by name, but as a neighbor. She then told her mother. From that point on, whenever the child related the incident, she named defendant. Defendant claimed at trial, and on appeal, that mother exerted influence on the child to name defendant rather than one of mother's boyfriends. Thus, the claimed improper influence or motive to name defendant occurred as of October 20, 1985, the date the child related the incident to her mother.

After that date, the child related the incident to Officer Chavez, Detective Craig, Sabrina Garcia, and Julia Barker. Defendant argues that the child's statements to those persons constituted inadmissible hearsay, since they were made *after* the

alleged improper influence or fabrication. The state contends the statements were not hearsay, were admissible as prior consistent statements under Rule 11–801(D)(1)(b), and that it does not matter if the statements do not antedate the time of the alleged fabrication or improper motive.

Rule 11–801(D)(1)(b) provides:

A statement is not hearsay if * * * [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is * * * consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive * * *.

The precise question defendant presents has not been decided in New Mexico. *But see Bendorf v. Volkswagenwerk Aktiengeselischaft,* 90 N.M. 414, 564 P.2d 619 (Ct. App.1977) (holding without discussion that trial court properly exercised discretion in excluding two statements made after accident and at time when motive was present to deny any wrongdoing).

Under Rule 11–801(D)(1)(b), a prior statement is not excludable as hearsay, and may be offered for the truth of the matter asserted, when two requirements are met. First, the declarant must testify at trial and must be subject to cross-examination concerning the statement. We address this requirement under the next issue, "Videotaped Deposition." Second, the statement must be consistent with the declarant's testimony and must be offered to rebut an express or implied charge of recent fabrication or improper influence or motive.

In addition to the above two requirements, some courts have imposed a further requirement that, in order to be admissible, a prior consistent statement must also have been made before the motive to fabricate existed. *United States v. Harris,* 761 F.2d 394 (7th Cir.1985). There is a split among the federal circuit courts concerning whether, to be admissible under Rule 11–801(D)(1)(b), a prior consistent statement must have been made prior to the existence of a motive to fabricate. 4 J. Weinstein &

M. Berger, *Weinstein's Evidence* ¶ 801(d)(1)(B)[01], at 801–154 (1988).

By a small majority, the federal courts of appeal have adopted the position that a prior consistent statement is admissible, for substantive purposes, only when it was made prior to the time the alleged improper influence or motive arose. *See, e.g., Breneman v. Kennecott Corp.,* 799 F.2d 470 (9th Cir.1986); *United States v. Bowman,* 798 F.2d 333 (8th Cir.1986), *cert. denied,* 479 U.S. 1043, 107 S.Ct. 906, 93 L.Ed.2d 856 (1987); *United States v. Harris; United States v. Henderson,* 717 F.2d 135 (4th Cir.1983), *cert. denied,* 465 U.S. 1009, 104 S.Ct. 1006, 79 L.Ed.2d 238 (1984); *United States v. Quinto,* 582 F.2d 224 (2d Cir.1978).

The rationale behind this requirement that the statement antedate the alleged motive to fabricate is simply that a consistent statement made after the declarant has a motive to fabricate has no probative value with regard to the declarant's credibility. It is not relevant. *See United States v. Miller,* 874 F.2d 1255 (9th Cir.1989) (requirement emerges from relevancy concerns under Federal Rules of Evidence 402 and 403). "Evidence which merely shows that the witness said the same thing on other occasions when his motive was the same does not have much probative force 'for the simple reason that mere repetition does not imply veracity.'" Weinstein, *supra,* at 801–150 to –151 (quoting *United States v. McPartlin,* 595 F.2d 1321, 1351 (7th Cir.), *cert. denied,* 444 U.S. 833, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979)).

Other circuits have rejected this requirement. *See United States v. Lawson,* 872 F.2d 179 (6th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 110, 107 L.Ed.2d 72 (1989) (requiring, however, that there be other indicia of reliability surrounding the statement to make it relevant to rebut the charges of fabrication); *United States v. Anderson,* 782 F.2d 908 (11th Cir.1986); *cf. United States v. Rios,* 611 F.2d 1335 (10th Cir.1979) (the consistent statement need not predate an inconsistent statement).

In addition, rather than opting for a per se rule of inadmissibility when the state-

ment does not antedate the alleged motive to fabricate, several federal circuits have held prior consistent statements may be admitted for the more limited purpose of rehabilitating the declarant's credibility, but not to prove the truth of the matter asserted, even though they did not antedate the alleged motive to fabricate. *See United States v. Pierre*, 781 F.2d 329 (2d Cir.1986); *United States v. Harris; United States v. Parodi*, 703 F.2d 768 (4th Cir.1983). *Cf. State v. Foster*, 87 N.M. 155, 530 P.2d 949 (Ct.App.1974) (although defendant's prior statement was not admissible to prove the truth of the matter asserted, it was admissible to rebut the implied charge of recent fabrication). *But see United States v. Miller* (holding that a statement which has no probative value in rebutting a charge of fabrication cannot have probative value in rehabilitating the witness); Note, *Prior Consistent Statements: Temporal Admissibility Standard Under Federal Rule of Evidence 801(d)(1)(B)*, 55 Fordham L.Rev. 759 (1987) (advocating that the antedating requirement be identical for both substantive and rehabilitative uses of prior consistent statements).

There is a serious problem, however, with drawing a distinction between admission for rehabilitative purposes and to prove the truth of the matter asserted. We doubt a jury can be expected to discern this distinction, even if a limiting instruction is given. That would be like asking a jury to consider a defendant's confession, not for the truth but only that he made it.

We adopt the position of those circuits which do not make it an absolute condition of admissibility that the declarant's statements have been made prior to the existence of the alleged motive to fabricate. Like the sixth circuit in *United States v. Hamilton*, 689 F.2d 1262 (6th Cir.1982), *cert. denied*, 459 U.S. 1117, 103 S.Ct. 753, 74 L.Ed.2d 971 (1983), we hesitate to adopt a bright line rule that would allow admission of prior consistent statements only if made before the supposed motive to fabricate arose. *See also United States v. Lawson*. We choose a more flexible position that would permit the trial court to examine the circumstances under which the

statement was made and make a determination of the statement's relevancy and probativeness to rebut a charge of recent fabrication or improper influence or motive. *Id.* While these factors are, of course, more likely to be found where the statement was made prior to the alleged discrediting influence, "temporal priority should not be a condition precedent to admissibility." *Id.*, 872 F.2d at 182.

We admonish, however, that the approach we take does not allow wide-open admission of just any prior consistent statement. Where there are other indicia of reliability that make the prior consistent statement relevant to rebut a charge of recent fabrication or improper motive, then the fact that the statement was made after the alleged motive to fabricate should not preclude its admissibility. *Id.* The trial court, however, has at its disposal SCRA 1986, 11–403, where the danger of unfair prejudice outweighs the probative value. *Id. See State v. Carr*, 95 N.M. 755, 626 P.2d 292 (Ct.App.), *cert. denied*, 454 U.S. 853, 102 S.Ct. 298, 70 L.Ed.2d 145 (1981).

To take a rigid position disallowing all prior consistent statements unless they antedate the event allegedly giving rise to the recent fabrication could unduly limit the use of those statements. In fact, an opponent could bar the use of otherwise admissible consistent statements by simply alleging the declarant fabricated his statements from the time they were first made. We emphasize that even though the prior consistent statements need not always antedate the motive to fabricate to be admissible for rehabilitation purposes, the statements must, of course, still meet the requirements of Rule 11–801(D)(1)(b) (must be offered to rebut charge of recent fabrication or improper influence or motive), SCRA 1986, 11–402 (relevancy), and Rule 11–403 (balancing probative value against prejudice).

On retrial it will be for the trial court to determine whether any of the child's prior consistent statements can be admitted to rebut the claim of recent fabrication, if made. The fact that a party makes a claim of recent fabrication does not automatically

open the door to admission of all prior consistent statements.

### 3. Videotaped Deposition

The state filed a pretrial motion, pursuant to NMSA 1978, Section 30–9–17 (Repl. Pamp.1984), and SCRA 1986, 5–504, requesting the issuance of an order permitting the child to testify by videotaped deposition outside defendant's presence in lieu of giving direct testimony at trial before the jury. At the motion hearing on November 12, 1986, the state presented two witnesses. Based on their testimony, the trial court granted the state's motion. Defendant argues his right of confrontation was denied on three separate grounds.

#### (a) *Use of Victim's Prior Consistent Statements*

The videotaped deposition was taken approximately one month prior to trial. At the commencement of trial, defendant stated for the first time that he was charging fabrication, collusion, and improper influence of the child by her mother. The prosecutor then announced his intention to use prior consistent statements of the child to rebut the charge of recent fabrication. *See* R. 11–801(D)(1)(b). Defendant objected to the use of the statements on the ground that he did not have an opportunity to cross-examine the child about those statements at the deposition.

■ A defendant's right of confrontation is satisfied where he has both the opportunity and a similar motive to develop testimony. *State v. Massengill,* 99 N.M. 283, 657 P.2d 139 (Ct.App.1983). The opportunity for cross-examination, rather than the actual cross-examination, is the key to determining whether confrontation rights are satisfied. *State v. Tafoya,* 105 N.M. 117, 729 P.2d 1371 (Ct.App.1986), *vacated,* 487 U.S. 1229, 108 S.Ct. 2890, 101 L.Ed.2d 924 (1988) *(Tafoya I),* aff'd on remand, 108 N.M. 1, 765 P.2d 1183 (Ct. App.1988), *cert. denied,* — U.S. —, 109 S.Ct. 1572, 103 L.Ed.2d 938 (1989) *(Tafoya II).* Defense counsel admitted he knew about the child's prior statements prior to the deposition. Nevertheless, he argues he

could not cross-examine her concerning those statements at the deposition because the state did not elicit them on direct examination. We are not persuaded by defendant's argument.

Defendant waited until after the deposition to charge recent fabrication, even though defendant knew of the statements well in advance of the deposition. Defendant could have made the child his own witness at the deposition in order to question her about the statements. In addition, defendant could have preserved his objection to the admissibility of prior consistent statements by making any cross-examination of the child relating to prior consistent statements subject to the admissibility of those statements. Defendant was well aware that the deposition was scheduled to be his only opportunity to cross-examine the child. Defense counsel's decision not to examine the victim concerning her prior statements may have been a sound tactic, but the decision was tactical nonetheless. Failure to exercise an opportunity to examine a witness for tactical reasons does not constitute the lack of opportunity to examine on which a violation of the right to confrontation may be grounded. *See State v. Massengill.*

Similarly, we reject the implication that the state created defendant's dilemma by failing to introduce the statements on direct examination of the child. Those statements were inadmissible hearsay until defendant made the charge of fabrication. *See* R. 11–801(D)(1)(b). We conclude that defendant's right of confrontation was satisfied inasmuch as he had an opportunity to cross-examine the child concerning her prior statements. *See Tafoya I; State v. Vigil,* 103 N.M. 583, 711 P.2d 28 (Ct.App. 1985).

#### (b) *Compliance with Section 30–9–17 and Rule 5–504*

■ Defendant next argues that the state failed to make the required showing that the child would suffer unreasonable and unnecessary harm if forced to testify at trial. *See* R. 5–504; § 30–9–17. This issue was not raised in the docketing state-

ment. Accordingly, we need not consider it. *State v. Aranda,* 94 N.M. 784, 617 P.2d 173 (Ct.App.1980). In his reply brief, defendant requests this court to construe his argument as a motion to amend the docketing statement. We note that the motion is untimely, since it was filed after the time for filing the brief-in-chief had expired. *State v. Moore,* 109 N.M. 119, 782 P.2d 91 (Ct.App.1989). *Moore* was decided while defendant's case was pending in this court. The law at the time defendant filed this appeal ambiguously stated that motions to amend were timely if filed within the original "briefing time." *State v. Hicks,* 105 N.M. 286, 731 P.2d 982 (Ct.App.1986); *State v. Rael,* 100 N.M. 193, 668 P.2d 309 (Ct.App.1983). Although this arguably would allow a defendant to make the motion as late as the reply brief, we doubt this court would have granted such a late motion to amend in those cases. *Moore* makes clear that a motion to amend in a case assigned to a non-summary calendar is timely only up until the brief-in-chief is due. Therefore, we deny defendant's motion to amend.

In any event, we do not need to consider this subissue. Because we remand for new trial, it will be necessary for the state, if it wishes to present the child's testimony through a videotaped deposition, to make the required showing under Section 30–9–17 and Rule 5–504. Even if that showing had been made in 1987 when the first trial commenced, that does not mean the same holds true today.

### (c) *Right to Face-to-Face Confrontation*

■ Finally, defendant contends that the use of the videotaped deposition, taken outside his presence, violated his right to face-to-face confrontation. The procedures used in this case were similar to those in *Tafoya.* Defendant could see the child on a television monitor, but the child could not see him. Defendant maintained voice contact with his attorney.

In *Tafoya I,* we questioned the need for face-to-face confrontation where the defense was not claiming recent fabrication. 105 N.M. at 121, 729 P.2d at 1375. Defendant maintains that this case is distinguish-

able because he charged fabrication. *See Coy v. Iowa,* 487 U.S. 1012, 1019–1021, 108 S.Ct. 2798, 2802, 101 L.Ed.2d 857, 866 (1988). In *Tafoya II,* this court, after remand from the United States Supreme Court, addressed the issue of face-to-face confrontation in light of *Coy.* The statute the Supreme Court considered in *Coy* permitted an automatic presumption of trauma; for that reason, the Court deemed it a violation of the defendant's constitutional right to confront his accuser. In contrast, under New Mexico's law, a specific and individualized finding must be made that the victim will suffer unreasonable and unnecessary mental or emotional harm as a result of testifying face-to-face with the defendant. *See* R. 5–504. In *Tafoya II,* this court distinguished *Coy* and recognized an exception to a defendant's right to face-to-face confrontation where there has been a specific individualized showing and finding of necessity by the trial court that the harm to the victim outweighed the defendant's right to a face-to-face meeting.

The present case, like *Tafoya,* is also distinguishable from *Coy.* There was testimony demonstrating that the child would suffer unreasonable and unnecessary harm if forced to testify at trial. There was ample evidence that the child would have difficulty testifying in defendant's presence. Julia Barker testified that the child would have difficulty sitting in the witness chair or talking if defendant were present. The trial court could properly determine that the potential for harm was substantial enough to outweigh defendant's right to a face-to-face confrontation. *See Tafoya II; State v. Vigil,* 103 N.M. 583, 711 P.2d 28 (Ct.App.1985); *see also State v. Vincent,* 159 Ariz. 418, 768 P.2d 150 (1989).

### *Conclusion*

We reverse and remand for a new trial consistent with this opinion.

IT IS SO ORDERED.

HARTZ and CHAVEZ, JJ., concur.