Larry Glen HOVERSTEN,
Plaintiff–Appellee,

v.

STATE OF IOWA, Defendant–Appellant.

No. 92–2402.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 19, 1993.

Decided July 13, 1993.

Thomas D. McGrane, Asst. Atty. Gen., Des Moines, IA, argued for defendant-appellant.

Edward J. Ennis, West Des Moines, IA, argued for plaintiff-appellee.

Before McMILLIAN, MAGILL, and LOKEN, Circuit Judges.

LOKEN, Circuit Judge.

Larry Glen Hoversten was convicted of criminal sexual abuse of his young stepdaughter after a state court trial at which the child testified behind a one-way mirror. The district court [1] granted a writ of habeas corpus, concluding that this procedure violated Hoversten's Confrontation Clause rights as construed in the subsequent Supreme Court decisions in *Coy v. Iowa,* 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988), and *Maryland v. Craig,* 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). The State of Iowa appeals, arguing that there was sufficient case-specific evidence of need for this child protecting procedure, and that any error was harmless. We affirm.

## I.

In January 1988, following a hearing, the five-year old child was found competent to testify at trial. Two months later, at the start of trial, the State moved for an order permitting use of a one-way mirror pursuant to Iowa Code § 910A.14 (1987):

> The court may require a party be confined to an adjacent room or behind a screen or mirror that permits the party to see and hear the child during the child's testimony, but does not allow the child to see or hear the party. However, if a party is so confined, the court shall take measures to insure that the party and counsel can confer during the testimony and shall inform the child that the party can see and hear the child during testimony.

The trial court granted the motion without a hearing, concluding that obstructing the child's view of Hoversten was "justified to protect the delicate emotional condition of the child in this traumatic experience of testifying in open court." Trial commenced with the one-way mirror in place, and with the testifying child seated on the lap of an adult friend. However, a mistrial was declared after twenty minutes when it was discovered that the person comforting the testifying child was a juror's sister.

The second trial began five weeks later before a different trial judge, who again permitted use of the one-way mirror over Hoversten's objection. The child testified at length, and four other prosecution witnesses recounted hearsay statements the child had made to them. The jury found Hoversten guilty. On June 3, 1988, he was sentenced to twenty-five years in prison. Later that month, the United States Supreme Court decided in *Coy* that use of a courtroom screen to shield two teenage witnesses in another Iowa prosecution had violated that defendant's Confrontation Clause right to "a face-to-face meeting with witnesses appearing before the trier of fact." 487 U.S. at 1016, 108 S.Ct. at 2801.

The Iowa Supreme Court nonetheless affirmed Hoversten's conviction. Noting that *Coy* had recognized a possible exception to the accused's confrontation right when necessary to protect child witnesses, the Iowa Supreme Court cited evidence that Hoversten's stepdaughter "had been the victim of horrendous and painful abuse by someone [and] was under treatment for the posttraumatic stress syndrome." The court concluded that "a de novo review of the record justifies the trial court's finding that the child needed the protection" of a one-way mirror. *State v. Hoversten,* 437 N.W.2d 240, 241–42 (Iowa), *cert. denied,* 493 U.S. 875, 110 S.Ct. 212, 107 L.Ed.2d 165 (1989).

After Hoversten had exhausted his state post-conviction remedies, the United States Supreme Court clarified its prior decision in *Coy:*

> Accordingly, we hold that, if the State makes an adequate showing of necessity, the state interest in protecting child witnesses from the trauma of testifying in a child abuse case is sufficiently important to justify the use of a special procedure that permits a child witness in such cases to testify at trial against a defendant in the absence of face-to-face confrontation with the defendant.
>
> The requisite finding of necessity must of course be a case-specific one: The trial

---

1. The HONORABLE DAVID R. HANSEN, Circuit Judge for the United States Court of Appeals for the Eighth Circuit, sitting by designation.

court must hear evidence and determine whether [screening] is necessary to protect the welfare of the particular child witness who seeks to testify. The trial court must also find that the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant. Denial of face-to-face confrontation is not needed to further the state interest in protecting the child witness from trauma unless it is the presence of the defendant that causes the trauma.... Finally, the trial court must find that the emotional distress suffered by the child witness in the presence of the defendant is more than *de minimis, i.e.,* more than "mere nervousness or excitement or some reluctance to testify."

*Maryland v. Craig,* 497 U.S. at 855–56, 110 S.Ct. at 3169 (citations omitted).

Hoversten then filed this habeas petition, alleging "there [was] no particularized case-specific showing of necessity" to justify abridging his confrontation right by use of the one-way mirror. In a thorough opinion, the district court agreed. It concluded that the case-specific findings mandated by *Craig* had not been made, that the record would not permit the district court to make those findings after the fact, and that the resulting Sixth Amendment violation was not harmless error.

■ On appeal, the State concedes that the pretrial hearing envisioned by *Craig* did not take place, and the trial court made no case-specific finding that the one-way mirror was necessary to protect the child witness. The Iowa trial court's finding of necessity was based upon the "traumatic experience of testifying in open court," a consideration expressly held in *Craig* to be insufficient. The Iowa Supreme Court's de novo review of the record likewise focused upon this abused child's need for protection generally, rather than her specific need for protection from the experience of testifying in front of Hoversten.

The State argues, however, that "the overall circumstances clearly show that the re-

quirements of *Craig* were met," and therefore "the omission of an explicitly-worded pretrial finding" should not invalidate the conviction. In other words, the State is asking the federal habeas court to determine whether the record supports a case-specific finding that no state court has made. We seriously doubt our authority under *Craig* to do so. Although the Supreme Court in *Craig* declined to prescribe any "categorical evidentiary prerequisites" for the use of child protection devices, it held that the trial court must make "a case-specific finding of necessity." 497 U.S. at 860, 110 S.Ct. at 3171.

■ Moreover, even if a federal habeas court may supply the missing *Craig* finding, we agree with the district court that such a finding may not be made here because the record does not show whether "the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant." 497 U.S. at 856, 110 S.Ct. at 3169. Hoversten was not present when the first judge examined the child to determine her competency to testify. The competency ruling did not address the potential impact of Hoversten's presence at trial, nor whether a screening device was needed to protect the child. Hoversten was not present at the child's pretrial depositions, when she was reluctant to talk about the alleged abuse. The first trial judge ordered the one-way mirror before he had seen the child and with no additional evidence about how a face-to-face confrontation might affect her. The second trial judge ordered the screening procedure without seeing the child and Hoversten in the courtroom together and after a colloquy that again contained no mention of the child's likely reaction to Hoversten's presence when she testified. Thus, the record before the two trial judges who ordered the one-way mirror cannot support the case-specific finding of need that is now constitutionally required under *Craig.*[2]

For the foregoing reasons, we agree with the district court that use of the one-way mirror at Hoversten's trial infringed his Sixth Amendment right of confrontation.

---

2. The State concedes that *Craig* is controlling precedent because it merely "rounds out" the rule in *Coy,* which was decided during Hoversten's direct appeal.

*See Cumbie v. Singletary,* 991 F.2d 715, 721 (11th Cir.1993).

## II.

■ There remains the question whether this error warrants federal habeas corpus relief. Confrontation Clause violations are subject to harmless error analysis. *See Delaware v. Van Arsdall,* 475 U.S. 673, 681–82, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986). The district court concluded that this constitutional violation was not "harmless beyond a reasonable doubt," the test under *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). The Supreme Court subsequently decided that a less rigorous harmless error standard applies in most habeas corpus cases—"whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson,* —— U.S. ——, ——, 113 S.Ct. 1710, 1713, 123 L.Ed.2d 353 (1993), quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946). The Court in *Brecht* relied in part on the fact that it was reviewing an error the state court had already found harmless under the *Chapman* standard. *See* —— U.S. at ——, 113 S.Ct. at 1721. This raises the question whether the *Brecht* standard also applies where, as here, the state courts never considered the harmless error issue because they found no error. We conclude that we need not reach that question because the error in this case was not harmless under either standard.

The error here was in allowing the child to testify behind the one-way mirror, depriving Hoversten of his confrontation right. *Coy* held that, in analyzing the evidence for harmless error, the child's testimony must be entirely excluded because it would be "pure speculation" to consider whether the child's testimony, or the jury's assessment of that testimony, would have changed had there been proper confrontation. "[H]armlessness must therefore be determined on the basis of the remaining evidence." 487 U.S. at 1022, 108 S.Ct. at 2803.

In this case, the prosecution's remaining evidence was primarily the hearsay testimo-

ny by two family members, a police investigator, and a physician as to statements the child had made about Hoversten touching her. This hearsay was admitted under Iowa Rule of Evidence 801(d)(1)(B), which requires that the declarant testify at trial, and it was offered "not for substantive purposes, merely to show the statement was made and that it was not prompted." If it is improper to speculate how the child might have testified with proper confrontation, as *Coy* teaches, it is also improper to speculate whether these hearsay statements would have been admitted—and for what purpose—at a hypothetical trial at which the child did not testify. Thus, for harmless error purposes, we must exclude the child's hearsay declarations as well as her in-court testimony.[3] Because the medical evidence did not conclusively establish that the child had been physically abused, much less that she had been abused by Hoversten, there can be no doubt that the child's testimony and her hearsay declarations had a substantial and injurious effect on the jury's verdict. *Compare Cumbie,* 991 F.2d at 725; *Lowery v. Collins,* 988 F.2d 1364, 1372–73 (5th Cir.1993). Thus, the Confrontation Clause error tainted the core of the prosecution's case, and we cannot label it harmless.

The judgment of the district court is affirmed.

---

3. We do not consider whether any of the hearsay declarations would be admissible at a retrial if the child did not testify. That is clearly a matter for the state courts to determine in the first instance.