The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number:_____

Filing Date: February 20, 2025

**No. A-1-CA-40788**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**BRYAN KEITH BERRY,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**Lee A. Kirksey, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Meryl E. Francolini, Assistant Solicitor General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Joelle N. Gonzales, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**WRAY, Judge.**

{1} Defendant appeals his conviction for one count of second-degree criminal sexual contact of a minor (CSCM), contrary to NMSA 1978, Section 30-9-13(B)(1) (2003). Before trial, the district court found, "the evidence presented establishes that the child-victim [(Child)] in this case cannot testify without suffering unreasonable harm pursuant to Rule 5-504 NMRA." As a result, the district court ordered the State to take Child's testimony at a videotaped deposition but did not allow Defendant to be physically present in the room during the proceeding. At trial, Child's deposition was substituted for her in-court testimony, and Defendant did not object. On appeal, Defendant challenges the district court's conclusions that these special procedures were justified under the circumstances and argues that as a result of these procedures, he was denied the right under the Sixth Amendment to the United States Constitution to confront and cross-examine his accuser. We hold that the district court's factual findings were supported by substantial evidence and justified the conclusion that a videotaped deposition was necessary under the circumstances. The district court did not, however, make factual findings to support the further conclusion that Defendant would not be physically present and would watch the deposition on a video monitor from another room. Nevertheless, Defendant did not object to the absence of findings or to the substitution at trial of Child's videotaped deposition testimony for face-to-

face confrontation. We therefore conclude that Defendant did not preserve an objection to the absence of findings and waived the protections of the constitutional rights he now asserts on appeal. Reviewing the admission of the videotaped deposition testimony for fundamental error, we affirm.

**BACKGROUND**

{2} Defendant was briefly responsible for babysitting Child—the four-year-old daughter of his wife's friend—in his home in Hobbs, New Mexico. Afterward, Child reported an incident, and Defendant was charged with one count of CSCM. The State filed a pretrial motion to take a videotaped deposition of Child pursuant to Rule 5-504(A) and argued that this special procedure was necessary "to prevent [Child] suffering from unreasonable and unnecessary mental or emotional harm." The State attached to the motion a forensic evaluation completed by Mr. Munro, a licensed professional clinical counselor. The forensic evaluation was based primarily on information Mr. Munro gathered during separate interviews with Child and her mother. Defendant did not respond to the State's motion.

{3} The district court held a pretrial hearing on the State's Rule 5-504(A) motion. The State presented the sworn testimony of Mr. Munro, who offered unrebutted expert opinions that Child would be traumatized by testifying both in court and in Defendant's physical presence. Although Defendant presented no evidence at the pretrial hearing, Defendant's counsel objected twice, unsuccessfully, to Mr. Munro's

testimony as speculative and argued against the State's motion on the grounds that "any person accused of a crime has a right to confront his accuser, has a right under the law for that witness's testimony to be cross-examined, and for that witness to appear in open court."

{4} At the end of the pretrial hearing, the district court weighed Defendant's confrontation rights against the potential for unreasonable and unnecessary emotional harm to Child and granted the State's Rule 5-504(A) motion. The district court also granted the State's separate request, made only during the pretrial hearing, that Defendant "not be present in the room while [the] deposition is going on." The district court explained the exclusion procedure it would implement for the videotaped deposition as follows:

> Now I have done a few of these over my time on the bench and I believe one I have done where the defendant was not present, under a similar situation. What we were able to do was to set up kind of a closed circuit. [The defendant] was in a room across the hallway, he was able to watch and listen in, in the deposition in real time. I gave his attorney the opportunity for breaks during the deposition—to step across the hall, consult with his client, talk about questions and issues that the defendant wanted raised during the deposition and that is the same process I intend to follow here.

Defendant did not object to the district court's exclusion procedure. In the written order granting the State's motion, the district court found that Child "cannot testify without suffering unreasonable harm pursuant to Rule 5-504" and ordered "that the

video deposition will comply with *State v. Fairweather*, 1993-NMSC-065, 116 N.M. 456[, 863 P.2d 1077]."

{5} During Child's deposition, Defendant sat in a room adjacent to the room in which Child testified and viewed the proceeding live on a video monitor. Both the district court and Defendant's attorney were physically present in the room where Child testified, and Defendant's attorney cross-examined Child. As noted above, Child's videotaped deposition testimony was played at the bench trial and admitted into evidence in lieu of in-court testimony without objection from Defendant. The district court found Defendant guilty, entered judgment, and imposed a sentence of fifteen years, with eight years suspended. This appeal followed.

**DISCUSSION**

{6} On appeal, Defendant contests the district court's order to take the deposition and to exclude Defendant from the room where the deposition occurred. In addition to challenging the sufficiency of both the evidence and the district court's findings to justify the procedures, Defendant also argues that aspects of the procedures impermissibly burdened the right to cross-examination. Defendant's arguments involve whether the Sixth Amendment right to confront an accuser, which is normally satisfied by physical, face-to-face confrontation at trial, has been adequately safeguarded by substitute procedures. *See* Rule 5-504. We therefore

review the protections of the Confrontation Clause and the circumstances in which substitute procedures are constitutionally acceptable.

## I.     The Confrontation Clause, the Physical Presence Element, and Substitute Procedures

{7}     The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Supreme Court of the United States has held that this "bedrock procedural guarantee applies to both federal and state prosecutions." *Crawford v. Washington*, 541 U.S. 36, 42 (2004). The core concern of the Confrontation Clause "is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990). This purpose is served by "[t]he combined effect of [the] elements of confrontation—physical presence, oath, cross-examination, and observation of demeanor by the trier of fact." *Id.* at 846.

{8}     The present case primarily involves the physical presence element of confrontation. Before *Craig*, the physical presence element had been described as the "right to meet face to face all those who appear and give evidence at trial" and was long considered the root of the confrontation right. *Coy v. Iowa*, 487 U.S. 1012, 1016 (1988) (internal quotation marks and citation omitted). The *Coy* Court described this strand of the right as the "irreducible literal meaning of the

[Confrontation] Clause" and left "for another day . . . the question of whether any exceptions exist." *Id.* at 1021. The Court cautioned, however, that any such exceptions, "[w]hatever they may be, . . . would surely be allowed only when necessary to further an important public policy." *Id.*

{9}     Two years after *Coy*, the Court continued the Confrontation Clause discussion and explored the contours of public policy exceptions to the physical presence aspect of the right. *Craig*, 497 U.S. at 849-50. *Craig* explained that the physical presence aspect of the confrontation right cannot be absolute and without exception because if it was, the Confrontation Clause would "prohibit the admission of any accusatory hearsay statement made by an absent declarant." *Id.* at 849. Such a broad interpretation of the physical presence strand of confrontation "would abrogate virtually every hearsay exception, a result long rejected as unintended and too extreme." *Id.* at 848 (internal quotation marks and citation omitted); *see also Crawford*, 541 U.S. at 50-51 (rejecting the view "that the Confrontation Clause applies of its own force only to in-court testimony," but observing that "not all hearsay implicates the Sixth Amendment's core concerns"). *Craig* ultimately held that "a defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of

the testimony is otherwise assured."[1] 497 U.S. at 850. The public policy interest at issue in *Craig* was the state's interest in protecting child sexual abuse victims from the trauma of testifying in the presence of the defendant. *See id.* at 856. Regarding whether the testimony had to be in court at all, the Court left open the possibility that a state's more general public policy interest "in the physical and psychological well-being of child abuse victims may be sufficiently important to outweigh, at least in some cases, a defendant's right to face his or her accusers in court." *Id.* at 853.

{10}     Along these lines, this Court and our Supreme Court have recognized that New Mexico has a "strong public policy"—shown by NMSA 1978, Section 30-9-17 (1978) and Rule 5-504(A)—"to protect child victims of sexual crimes from the further trauma of in-court testimony." *State v. Vigil,* 1985-NMCA-103, ¶ 10, 103 N.M. 583, 711 P.2d 28; *see also Fairweather*, 1993-NMSC-065, ¶ 25 (adopting the *Vigil* Court's articulation of the public policy interest served by Section 30-9-17 and Rule 5-504(A)). Both Section 30-9-17 and Rule 5-504 permit a pretrial, recorded deposition of an alleged victim of sexual abuse who is under the age of sixteen. Section 30-9-17(A) permits such a deposition "for a good cause shown," while Rule

---

[1]We note that there is an open question regarding how *Crawford*'s elimination of the indicia of reliability test articulated in *Ohio v. Roberts*, 448 U.S. 56 (1980), *abrogated by Crawford*, 541 U.S. at 42, 68-69 affects *Craig*'s public policy exception. *See Crawford*, 541 U.S. at 42, 68-69 (overruling *Roberts*' reliability test and holding that "[w]here testimonial evidence is at issue, . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination"). We express no opinion on this question, as it is not before us.

5-504(A) permits the deposition on "a showing that the child may be unable to testify without suffering unreasonable and unnecessary mental or emotional harm." This Court has explained that the State meets the "good cause" standard set forth in Section 30-9-17(A) by satisfying the criteria articulated by Rule 5-504(A). *State v. Ruiz*, 2001-NMCA-097, ¶ 26, 131 N.M. 241, 34 P.3d 630.

{11}   Neither the rule nor the statute is intended to prevent a face-to-face confrontation between the alleged child-victim and the defendant at the videotaped deposition. *See id.* The statute plainly provides that "[t]he videotaped deposition shall be taken . . . in the presence of the district attorney, the defendant and his attorneys." Section 30-9-17(A). The rule generally conditions the admissibility of the videotaped deposition upon the defendant's presence at the videotaped deposition, among other requirements. *See* Rule 5-504(B)(2). New Mexico courts have long accepted that adherence to Rule 5-504 satisfies the Confrontation Clause. *See State v. Herrera*, 2004-NMCA-015, ¶ 7, 135 N.M. 79, 84 P.3d 696 ("When a court follows these procedures, a defendant's confrontation right under the Sixth Amendment to the United States Constitution is satisfied."). The present case, however, involves a deposition of an alleged child-victim of a sexual offense that was taken outside Defendant's physical presence. Because the procedure did not comply with Rule 5-504(B)(2), the State cannot rely on the rule alone to demonstrate compliance with the Confrontation Clause. Instead, to support the admission of the

deposition at trial, the facts and circumstances must otherwise justify a conclusion that the procedures used were constitutionally adequate.

{12} As we have noted, this was the very issue before the *Craig* Court—whether and under what circumstances an alleged child-victim of a sexual offense could be permitted to testify without physically confronting the defendant. 497 U.S. at 857; *see also Fairweather*, 1993-NMSC-065, ¶ 23. The *Craig* Court described the "requisite finding of necessity" in this circumstance to include whether (1) the defendant's absence "is necessary to protect the welfare of the particular child witness"; (2) the child "would be traumatized, not by the courtroom generally, but by the presence of the defendant"; and (3) "the emotional distress suffered by the child witness in the presence of the defendant is more than de minimis." 497 U.S. at 855-56. Where the requisite findings are made as to the particular child witness, and the witness testifies under oath, subject to full cross-examination, observed by the judge, jury, and the defendant, "the Confrontation Clause does not prohibit use of a procedure that, despite the absence of face-to-face confrontation, ensures the reliability of the evidence by subjecting it to rigorous adversarial testing and thereby preserves the essence of effective confrontation." *Id.* at 855-57; *see Fairweather*, 1993-NMSC-065, ¶¶ 27-30.

{13} Thus, we have two inquiries. First, whether the deposition was justified under Rule 5-504(A). Second, whether Defendant's exclusion from that deposition was

justified under *Craig* such that the recorded deposition was admissible at trial. Defendant additionally contends that because he had no opportunity for a pretrial interview and could not prepare for the deposition, the procedure employed in the present case did not permit him to adequately cross-examine Child. We address each argument in turn.

**II.  The Evidence and Findings Supporting the District Court's Order to Take Child's Deposition Under Rule 5-504(A)**

{14}  Defendant challenges the evidentiary basis for the district court's factual findings supporting its conclusion that a videotaped deposition was necessary to prevent Child from suffering unreasonable emotional harm. We review such findings for substantial evidence and resolve all disputed facts in favor of the successful party, indulge all reasonable inferences in support of the challenged findings, and discard any contrary evidence and inferences. *See Vigil*, 1985-NMCA-103, ¶ 7. "[S]ubstantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The committee commentary accompanying Rule 5-504 suggests "that the court should consider [four] factors in determining whether a videotaped deposition should be taken to avoid a victim child from suffering unreasonable and unnecessary mental or emotional harm." The factors suggested by the committee commentary are whether

    (1)    the child is unable to testify because of fear;

(2)   there is a substantial likelihood, established by expert testimony, that the child would suffer emotional trauma from testifying;

(3)   the child suffers a mental or other infirmity; or

(4)   conduct by defendant or defense counsel causes the child to be unable to continue testifying.

Rule 5-504 comm. cmt. In its written order granting the State's Rule 5-504(A) motion, the district court found that "the evidence presented establishes that the [C]hild-victim in this case cannot testify without suffering unreasonable harm pursuant to Rule 5-504." Additionally, during the pretrial hearing, the district court considered each of the suggested committee commentary factors and made oral findings on the record with respect to each.

{15}   The district court's findings were based on Mr. Munro's written forensic evaluation and his testimony at the pretrial hearing. The evaluation reported that Child "repeatedly stated that she did not like to talk about [Defendant]" and that Child "gets mad when she talks about him." Mr. Munro noted reports from Child's mother that after disclosing the sexual abuse, Child started crying more frequently when she was outside the home and away from her parents, and after the interview with Mr. Munro, Child began experiencing stomach problems at preschool. At the hearing, Mr. Munro testified that "it would also be quite reasonable to assume that if [Child] testified in court, she may not have a[n] observable reaction during the court proceeding, but it would have dramatic effects after." Mr. Munro stated that

he could not "see a situation where [Child] would not experience trauma testifying, specifically in a courtroom setting," and concluded that his "biggest concern is her behavioral reaction after testimony that was caused by the fact that she had to testify." Defendant did not object to Mr. Munro's qualifications as an expert, and although the district court overruled Defendant's two objections that this testimony was speculative, Defendant does not appear to challenge those evidentiary rulings on appeal. Instead, to this Court, Defendant contends that Mr. Munro's testimony was too speculative and general to justify a videotaped deposition under Rule 5-504(A).

{16} We disagree and conclude that Mr. Munro's report and testimony, as we have described that evidence, satisfied the State's burden under Rule 5-504(A). As the district court recognized, Mr. Munro was qualified as an expert in the field of child and adolescent trauma and offered an unrebutted opinion about what was substantially likely to occur in the future. Defendant's evidentiary challenge to the district court's written and oral findings amounts to an assertion that Mr. Munro "did not indicate . . . the facts supporting his conclusion that [Child] would be *unreasonably* harmed by testifying at trial." Mindful of our standard of review, we decline to reweigh the evidence and are satisfied that Mr. Munro provided "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *see Vigil*, 1985-NMCA-103, ¶ 7, that Child "may" have been "unable

to testify without suffering unreasonable and unnecessary mental or emotional harm," *see* Rule 5-504(A). *See also* Rule 5-504 comm. cmt. (suggesting that the district court consider whether "there is *a substantial likelihood*, established by expert testimony, that the child would suffer emotional trauma from testifying" (emphasis added)).

{17}   Defendant suggests that the district court's written finding did not justify protecting Child from having to testify live but instead related to "simply testifying in general." To the contrary, the district court's oral and written findings were sufficiently specific for this Court to "review those findings in determining whether the [district] court properly balanced the defendant's Sixth Amendment right and the special need for protection of the child witness." *Fairweather*, 1993-NMSC-065, ¶ 29; *see State v. Tafoya*, 1988-NMCA-082, ¶¶ 16, 23, 108 N.M. 1, 765 P.2d 1183 (noting that the district court's "detailed oral findings" satisfied the Confrontation Clause). At the hearing and on Defendant's prompting, the district court reviewed the suggested factors set forth in the Rule 5-504 committee commentary and the balance of those factors is reflected in the written finding that Defendant challenges. Specifically, the district court weighed the first and fourth factors against ordering the videotaped deposition because the State presented no evidence establishing that Child was afraid of Defendant or that the conduct of Defendant or Defendant's counsel would cause Child to be unable to testify. The district court found, in relation

to the third factor, that Child's "very young age" constituted "a form of infirmity." We view the district court's consideration of Child's young age not as an overly broad and unsubstantiated policy finding that young age is always an infirmity, as Defendant contends, but as part of the district court's "careful, informed weighing and balancing based on particularized evidence" that relates to Child specifically. *See Tafoya*, 1988-NMCA-082, ¶ 16. With respect to the second factor, which most closely resembles the standard set forth in Rule 5-504(A), the district court found that "there is a substantial likelihood, established by Mr. Munro, the expert, that Child would suffer emotional trauma from testifying." To support this finding, the district court could (1) reasonably infer from the State's evidence that requiring Child to testify in court would cause her mental or emotional harm, exacerbate existing somatic symptoms, and lead to other negative changes in her behavior; and (2) conclude based on the evidence that the harm would be unreasonable under the circumstances. *See Vigil*, 1985-NMCA-103, ¶ 7 ("[O]n appeal, all disputed facts are resolved in favor of the successful party, with all reasonable inferences indulged in support of the finding, and all evidence and inferences to the contrary discarded."). We are therefore satisfied that the district court reasonably accepted the State's evidence as adequate to support its findings justifying the need for a videotaped deposition in this case. Next, we consider Defendant's arguments challenging the

district court's conclusion that he would not be physically present during Child's deposition.

### III. The District Court's Order to Exclude Defendant From the State's Rule 5-504(A) Deposition and the Admissibility of That Deposition at Trial

{18} To contextualize Defendant's arguments, we briefly return to the rules governing substitute procedures and the Confrontation Clause. As we have noted, the admissibility of a Rule 5-504(A) deposition depends in part on the requirement in Rule 5-504(B)(2) that Defendant be present at the deposition unless the district court makes the particularized findings outlined in *Craig*. With appropriate findings, the lack of Defendant's physical presence does not violate the Confrontation Clause and the deposition may be otherwise admissible. In this tangled context, Defendant makes two arguments: (1) the State did not present substantial evidence that Child would be harmed by testifying in Defendant's physical presence; and (2) the district court did not make sufficient findings of fact supporting the decision to exclude Defendant from the deposition. Based on the evidence presented in Mr. Munro's report and testimony, which we have already described, the district court's decision to conduct Child's deposition outside Defendant's physical presence was supported. Nevertheless, whether the evidence supported the decision is not the only inquiry. *See State v. Benny E.*, 1990-NMCA-052, ¶ 11, 110 N.M. 237, 794 P.2d 380 ("Even though the evidence we have already summarized may support the required individualized findings, making such findings is not our function as a reviewing

court."). The record before us contains no individualized findings related to Defendant's absence from the deposition. *See Craig*, 497 U.S. at 855-56 (describing the individualized findings that specifically justify excusing face-to-face confrontation and substituting an alternate procedure). We conclude, however, that this issue was not preserved.

{19} Defendant did not alert the district court to any error arising from the absence of findings related to the physical presence element of the confrontation right, and the State did not have the opportunity to cure any defects or counter the objections Defendant could have made. *See DeFillippo v. Neil*, 2002-NMCA-085, ¶ 12, 132 N.M. 529, 51 P.3d 1183 (discussing the purposes of the preservation rule). Defendant did not object to his exclusion from the deposition on the basis that the district court did not make the required factual findings, nor did Defendant raise the absence of findings as an objection to the admission of the videotaped deposition in lieu of Child's live testimony at trial. As a result, the Confrontation Clause issue that Defendant raises in relation to his exclusion from the deposition is unpreserved, and we would review only for fundamental error. *See Herrera*, 2004-NMCA-015, ¶ 5 (declining to review de novo the decision to admit a videotaped deposition when the defendant did not object and instead applying fundamental error analysis). But Defendant does not seek fundamental error review, and while some constitutional deprivations might compel our review nonetheless, in the present case, we conclude

that Defendant waived the right to confrontation by conduct. *See id.* ¶¶ 8-9 (declining to find fundamental error in part where the "[d]efendant's actions indicate that he implicitly waived his right to face-to-face confrontation by conduct"). Like the defendant in *Herrera*, Defendant (1) "did not file a response to the State's motion for the videotaped deposition"; (2) "did not object at the time of the taking of the deposition"; and (3) did not object "at the time that the district court admitted the deposition tape as evidence." *See id.* ¶ 9. The defendant in *Herrera* relied on the deposition tape in opening and closing arguments, *id.*, and Defendant similarly referred to Child's deposition testimony in argument on directed verdict and in closing. Under these circumstances, we decline to review for fundamental error the admission of the deposition testimony at trial. *See State v. Garcia*, 2019-NMCA-056, ¶ 38, 450 P.3d 418 (declining to exercise appellate discretion to review an unpreserved claim that the defendant's constitutional right to a speedy trial was violated).

**IV. The Right to Cross-Examination**

{20} Defendant also contends that the deposition procedure violated the "right to a full and fair opportunity for cross-examination." Specifically, Defendant contends that even though he was permitted to cross-examine Child at the deposition, "[t]he lack of a pretrial interview limited the defense's ability to mount a defense at the deposition." As the State points out, however, Defendant does not demonstrate

preservation, and we therefore decline to consider the issue. *See State v. Schaublin*, 2015-NMCA-024, ¶ 27, 344 P.3d 1074.

**CONCLUSION**

{21}    We affirm the district court.

{22}    **IT IS SO ORDERED.**

_____
**KATHERINE A. WRAY, Judge**

**WE CONCUR:**

_____
**JACQUELINE R. MEDINA, Judge**

_____
**SHAMMARA H. HENDERSON, Judge**